**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| JAMAR EVANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-01326-TWP-CSW |
| | ) | |
| HARRAH'S HOOSIER PARK RACING AND CASINO, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION TO DEFER SUMMARY JUDGMENT**

Pending before the Court are Defendant Hoosier Park, LLC's ("Hoosier Park") Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 19) and Motion for Summary Judgment (Dkt. 37), and *pro se* Plaintiff Jamar Evans's ("Evans") Motion to Defer or Deny Summary Judgment (Dkt. 45). Evans initiated this action alleging race and age discrimination and retaliation. Hoosier Park filed a motion to dismiss for failure to state a claim, and understandably, before the dispositive motion deadline expired, also filed a motion for summary judgment. Hoosier Park's Motion to Dismiss is ripe for ruling, but Evans has filed a Rule 56(d) motion asking the Court to defer ruling on the summary judgment motion until he has an opportunity to pursue additional discovery. The Court will address the Rule 12(b) motion to dismiss before looking at the evidentiary record required for a Rule 56 summary judgment. For the reasons discussed below, Hoosier Park's Motion to Dismiss is **denied**, Evans's Motion to Defer or Deny Summary Judgment is **denied,** and Evans is **granted leave** to respond to the pending summary judgment motion.

## I. BACKGROUND

**A. Factual Background**

At the pleading stage, the factual allegations in the operative amended complaint are accepted as true, and the Court draws all inferences in favor of Evans as the nonmoving party. *See Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). Evans has attached exhibits to the complaint, which the Court may consider. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (the court may consider "documents that are attached to the complaint, documents that are central to the complaint and referred to in it.").

Evans is a fifty-three-year-old African American man (Dkt. 8 at 1). In September 2024 he was accepted into the Dealer Trainee Program at Hoosier Park. *Id.* at 3. During the program, Evans "was confronted with the issue of [his] color or race or ethnic origin." (Dkt. 8-1 at 2). For example, Evans and a coworker were discussing Evans painting his fingernails black when Otis, a Table Games Supervisor, said, "Why do that, you're already black?" *Id.* Evans took the comment as a "bad joke," and responded by noting that his hands were brown and his fingernails were dirty but not black. Otis then replied by saying, "You are Jamar, and you are a badass." *Id.* Otis eventually convinced Evans and everyone else in the room to repeat the "badass" phrase. Evans was humiliated and believes that the Indiana Gaming Commission ("IGC") and Hoosier Park labeled him a "badass." *Id.*

At the end of the Dealer Trainee Program, participants auditioned for a position at Hoosier Park. Only two people passed the first audition, and both were under the age of twenty-five (Dkt. 8 at 4). Evans did not pass the first audition, but he did pass on his second try when he auditioned in front of Brad, a Senior Manager of Table Games. *Id.* Everyone else in his class, aside from an African American woman and a Hispanic woman, passed as well. *Id.* at 3–4.

Following the audition, Evans participated in an orientation at Hoosier Park. *Id.* at 4. As

part of the orientation, Evans filled out an application for an occupational license from the IGC. *Id.* It was explained to Evans that the application required him to disclose prior convictions, unless those convictions had been previously sealed, dismissed, or otherwise expunged. *Id.* Evans has prior convictions; however, because they were dismissed or expunged, he did not disclose them on his application. *Id.* At the end of the orientation, he received a temporary occupational license from the IGC. *Id.*

Although the job began well, Evans quickly began to feel tensions at work and thought that he was being targeted for harassment. *Id.* at 5. Among other things, he was one of the last to receive approval for all games, because his supervisors were only permitting him to deal blackjack. *Id.* He was also "hounded" by video security surveillance and regularly written up. He learned about write-ups from other coworkers, who told him that everyone had them and that someone could receive more than thirty before being terminated. *Id.*

On a different day, while Evans was waiting to clock into his shift, Hoosier Park management held an employee meeting where one of Evans's supervisors, Kaegan, began reading all of Evans's write-ups to the group. Evans had never seen any other coworkers reprimanded in this manner and subsequently spoke to Alex and Miranda, a Table Games Supervisor, about the incident. *Id.* Though Alex advised Evans not to take Kaegan's actions seriously, Evans nonetheless expressed his frustration over the humiliation he experienced at the meeting. *Id.*

Evans continued to be reprimanded and corrected by his supervisors and received additional write-ups. *Id.* at 6. In response, Evans had discussions with Brad, whom Evans trusted from the audition process. *Id.* Brad assured Evans that Evans was not the only one who was receiving write-ups and that those write-ups would not be part of Evans's permanent record until after the probationary period. *Id.* Brad recognized that some mistakes were inevitable, which is

why someone can receive around thirty write-ups in a year without being terminated. *Id.* at 7.

On December 22, 2024, "the workplace was overwhelmingly hostile." *Id.* When Evans came to work, he had an incident with security, who claimed that Evans failed to enter the correct entrance, which he thought was awkward and made him feel a bit ridiculous. *Id.* Surveillance was following him through the casino, even when he was not at the gaming tables. *Id.*

On December 22, 2024, "Football Jersey Saturday," Evans felt like his workplace grew more hostile. *Id*. Evans was wearing a Mickey Mouse jersey. *Id*. at 8. Kaegan yelled at Evans that his jersey was not appropriate. *Id*. Evans alleges there was no clear communication about appropriate attire for Football Jersey Saturday. Evans was immediately approached by Rochelle, an African American Table Games Supervisor, who told Evans that "there was probably another shirt to wear inside the dressing room." *Id*. Evans said he was "just going to go home," but Rochelle responded that if he did, he would be penalized for absenteeism. *Id*. Rochelle and another African American male followed Evans into the dressing area and were standing watching him as he removed his shirt. *Id*. at n.2. Evans felt like he was being forced to "strip naked" to avoid being penalized by Rochelle. *Id*. Evans went to work feeling anxious, upset, and humiliated. *Id.* at 8.

That same night, Kaegan and agents from the IGC came to Evans's assigned table to "eighty-six" an African American customer who was told that he no longer was allowed at the casino. *Id.* The customer returned shortly after and asked another African American customer if he was leaving as well. *Id.* The other customer replied that he was not going to leave. *Id.* Evans did not receive an explanation for the African American customer's dismissal. *Id.*

Following the events on December 22, 2024, Evans sent two emails to Hoosier Park's Human Resources. *Id.* He sent one email to AskAnthony@caesars.com ("AskAnthony"), which provides a resource to employees at Hoosier Park to request answers to employment questions,

and another email to Lauren Atwood ("Atwood"). *Id.* Evans wanted more information on the company's policy for Football Jersey Saturday and to express the embarrassment he experienced from the situation. *Id.* He was confused about the actual policy since he had seen other jerseys, including a "Waterboy jersey," a basketball jersey, and a jersey without a team or logo, that did not fit the criteria cited by Kaegan. *Id.* He also mentioned that "if [he is] being targeted, [he believes] that if [he sees] something to say something" (Dkt. 8-1 at 5). Although he did not receive a response from AskAnthony, he did receive a response from Atwood, who let him know that the jerseys should be football jerseys (Dkt. 8 at 8). She also asked him who embarrassed him and who he had spoken to about the incident, while assuring him that Hoosier Park does not tolerate this behavior from any team member. *Id.* at 9.

In his response to Atwood, Evans referenced previously being embarrassed by Kaegan and Kaegan coming to his table to "86 the player from the casino" (Dkt. 8-1 at 6). Evans also described another situation that occurred on Football Jersey Saturday (Dkt. 8 at 9). That night, he had sought out Brad because Evans wanted to discuss if the upcoming holidays would affect the night's schedule and overtime. *Id.* Evans also wanted to ask why another person, who was white, had been assigned to the blackjack table where Evans had been dealing. *Id.* He found Brad with the assistance of his coworker Brock. *Id.* Brad, who was previously friendly, was hostile to Evans and told him, "You're outta here." *Id.* Brock then added that he should leave his supervisor's jersey. *Id.* While Evans was at his locker, Brad yelled across the hallway at Evans, asking if Evans was off the clock. *Id.*

On December 27, 2024, Art, a manager who had failed Evans at Evans's first audition, met with Evans. *Id.* at 4, 9. They spoke about the incidents with Kaegan that Evans had addressed with Atwood. *Id.* at 10. Although it was not explicitly stated, Evans believed that Art approached him

because of his messages with Atwood, since Atwood had mentioned that she would contact leadership about the situation. *Id.* At the meeting, Art seemed empathetic and let Evans know that it was appropriate to take the incidents personally. *Id.*

Over the following days, Evans enjoyed his work but did not like what he considered to be a hostile environment. *Id.* Following the incident with Kaegan, Evans was frequently assigned to Rochelle's area, and she assured him that he would have nothing to worry about when working in her area. *Id.* Surveillance never called on Evans when he was working in Rochelle's area. *Id.* One day, Rochelle continually attempted to do Evans's work for him. *Id.* When Evans asked if Rochelle would rather do the work instead of him, Rochelle walked away. *Id.* After this incident, Rochelle was standoffish towards Evans. *Id.* at 10–11.

On a separate occasion, Evans was assigned to Rob's area. *Id.* at 11. Rob had previously given Evans a note advising him on proper policies while working. *Id.* at 9. When Evans was working in Rob's area, Rob whispered in his ear and warned him that "[i]f you keep making mistakes, they are going to get rid of you." *Id.* at 11. Evans was not making mistakes at the time, but the comment reminded Evans of the note that Rob had left him previously and Evans's interactions with Brad and other coworkers. *Id.* He also noticed that Rob was distressed and unusually chatty. *Id.* Rob complained in a vague way about something that management had done to Rob and said, "[T]hey are always doing something." *Id.* Evans was assigned to an abandoned part of the casino that night and did not receive a single customer during his entire eight-hour assignment. *Id.* The second supervisor on duty was Kaegan. *Id.*

Two weeks after Evans submitted his complaint about Kaegan's behavior, Hoosier Park terminated Evans. *Id.* at 13, n.5. Evans alleges that Keagan and the Indiana Gaming Commission conspired to rid him and of his employment after he complained to management about Kegan's

behaviors (Dkt. 8 at 13). On his last day, Evans was gathering his belongings at his locker when he was approached by an African American man (Dkt. 8-1 at 3). This man appeared to be under thirty years old and was a table games dealer who had recently been transferred. *Id.* Evans believes that this man was his "new and younger replacement" and contends that Hoosier Park orchestrated this encounter so that Evans could meet his younger replacement. *Id.*

**B. Procedural Background**

In his Amended Complaint (Dkt. 8), Evans brings claims against Hoosier Park for discrimination and retaliation in violation of Title VII, § 1981, and the ADEA. He bases his discrimination claims on the events described above and an alleged conspiracy between Hoosier Park and the IGC to terminate him through the disclosure of the expunged felony on his record (Dkt. 8 at 11). On October 2, 2025, Hoosier Park filed moved to dismiss Plaintiff's Amended Complaint (Dkt. 19), pursuant to Rule 12(b)(6) for failure to state a claim.

At the parties October 6, 2025, Initial Pre-Trial Conference, the Magistrate Judge adopted the case management plan which established that discovery requests had to be served on the responding party no later than February 9, 2026, and depositions completed by no later than April 6, 2026 (Dkt. 17 at 3). On May 5, 2026—the dispositive motions deadline—Hoosier Park filed a Motion for Summary Judgment (Dkt. 37). In response, Evans filed a Motion to Defer or Deny Summary Judgment (Dkt. 45). On May 14, 2026, the Magistrate Judge held a Telephonic Discovery Conference to resolve ongoing discovery disputes and concluded that there were no additional outstanding discovery issues to be addressed (Dkt. 47 at 1).

## II. LEGAL STANDARDS

**A. Motion to Dismiss under Rule 12(b)(6)**

Rule 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a

claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), courts accept as true all factual allegations in the complaint and draw all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("[I]t is not enough to give a threadbare recitation of the elements of a claim without factual support."). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must "include[] 'enough facts to state a claim to relief that is plausible on its face.'" *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (quoting *Khorrami v. Rolince*, 539 F.3d 782, 788 (7th Cir. 2008)). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

**B. <u>Motion to Defer or Deny under Rule 56(d)</u>**

Pursuant to Rule 56, a court is permitted to "delay consideration of a summary judgment motion and order additional discovery before ruling if the nonmovant demonstrates that 'it cannot present facts essential to justify its opposition.'" *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d

618, 627–28 (7th Cir. 2014) (quoting Fed. R. Civ. P. 56(d)). The party seeking relief under Rule 56(d) must offer an affidavit or declaration specifying the additional information that the party expects to discover and explain how that information would assist that party in reaching trial on the legal theory set forth by the other party. *See F.C. Bloxom Co. v. Tom Lange Co. Int'l*, 109 F.4th 925, 936 (7th Cir. 2024). The request in the affidavit or declaration must be "more than a fond hope that more fishing might net some good evidence." *Smith v. OSF Healthcare Sys.*, 933 F.3d 859, 864 (7th Cir. 2019). Rule 56(d) does not require the Court to delay ruling on summary judgment if the requested discovery would not make any difference. *See F.C. Bloxom*, 109 F.4th at 936; *Smith*, 933 F.3d at 864–65.

## III. DISCUSSION

Hoosier Park seeks both a dismissal of this action pursuant to Rule 12(b)(6), and summary judgment as a matter of law. In response to Hoosier Park's Motion for Summary Judgment, Evans has moved to defer or deny summary judgment so that he can conduct additional discovery to obtain information that is allegedly essential to opposing the summary judgment motion. In this Order, the Court addresses only Hoosier Park's Motion to Dismiss and Evans's Motion to Defer or Deny Summary Judgment.

### A. Motion to Dismiss under Rule 12(b)(6)

Hoosier Park argues that Evans's claims for race and age discrimination, retaliation, and harassment fail to allege that Hoosier Park's actions could be tied to his race or age, and that Evans fails to plead any adverse employment action taken by Hoosier Park or any similarly situated employee outside of his protected classes who Hoosier Park allegedly treated more favorably (Dkt. 20 at 1–2). In response, Evans argues that dismissal is not appropriate because Hoosier Park is unable to provide a legitimate, nondiscriminatory rationale for his termination and he bases this

on the burden shifting framework formulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (Dkt. 22 at 3–4). Hoosier Park points out that this argument is incorrect and at best, Evans erroneously relies on a summary judgment standard at the pleading stage (Dkt. 23 at 3).

The Court agrees that Evans has mistakenly attempted to apply a summary judgment standard to the motion to dismiss. However, Hoosier Park has also incorrectly analyzed the current issues by relying on summary judgment case law. Hoosier Park argues that Evans must set forth a *prima facie* case for his claims (Dkt. 20 at 6). For support, Hoosier Park cites *Lloyd v. Mayor, City of Peru*, No. 3:15-cv-624-RLM-MGG, 2018 WL 2445566, at *4 (N.D. Ind. May 29, 2018); *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010); and *Dillon v. Seed*, No. 4:10cv41, 2010 U.S. Dist. LEXIS 119032, at *4–5 (N.D. Ind. Nov. 8, 2010) (citing *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007)) (Dkt. 20 at 5, 6). *Lloyd*, 2018 WL 2445566, at *4 and *Berry*, 618 F.3d at 691 are both summary judgment decisions, and *Dillon*, 2010 U.S. Dist. LEXIS 119032, at *4–5 is a district court case that erroneously relies on summary judgment case law in ruling on a motion to dismiss. The Seventh Circuit has specifically warned against incorrectly applying summary judgment case law to a motion to dismiss in the context of employment discrimination. *See Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022); *see also Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1338 (7th Cir. 2024) (rejecting the district court's use of a list of enumerated conditions for proving a hostile work environment and similar lists when determining whether to dismiss a complaint, since such requirements are inappropriate at the pleading stage).

At this stage of the litigation, Evans does not need to plead a *prima facie* case. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013); *Kaminski*, 23 F.4th at 777. Evans does not have to provide facts for every element of his claims. *See Kaminski*, 23 F.4th at 777. In

the context of employment discrimination, all that Evans needs to do is "advance plausible allegations that [he] experienced discrimination because of [his] protected characteristics." *Id.* at 776; *see also Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) ("A complaint alleging sex discrimination under Title VII 'need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex.'" (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008))).

In the Amended Complaint, Evans alleges mistreatment by his supervisors, including Kaegan, who made him feel humiliated by presenting his write-ups publicly and allegedly imposing restrictions regarding his attire on Football Jersey Saturday in an incorrect and unfair way. He also alleges that Kaegan conspired against him to obtain his termination. Evans cites circumstances linked to his race and age. For example, a supervisor at Hoosier Park asked why Evans he would need to paint his fingernails black, since he was already black. Kaegan kicked out an African American customer at the table that Evans was working on Football Jersey Saturday. Evans also received a warning from an African American supervisor that Hoosier Park would fire him if he kept making mistakes, at a time when he was not making mistakes. On the same night, this supervisor complained to Evans about management and made statements like, "they are always doing something." (Dkt. 8 at 11). *Cf. Humphries v. CBOCS W., Inc.* 474 F.3d 387, 407 (7th Cir. 2007) (finding that a coworker's warnings to the plaintiff about supervisors who she believed "were 'up to something to harm [the plaintiff]'" was a sign of possible discrimination). Regarding disparate treatment due to age, Evans states that he failed his first audition, while the only two people who passed the first audition were less than twenty-five years old, and that Hoosier Park replaced him with a younger games dealer.

Hoosier Park argues that the facts alleged are insufficiently clear to provide notice of the

claims (Dkt. 20 at 7). As Evans correctly asserts, employers require little information to be put on notice of discrimination claims, due to their familiarity with such claims and their knowledge of how to investigate them (Dkt. 22 at 5 (citing *Carlson*, 758 F.3d at 827)).

Hoosier Park next asserts that Evans must plead that his age was the "but for" cause of his adverse employment action (Dkt. 20 at 6). That is correct. *See McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 367 (7th Cir. 2019). Protected characteristics also must be the "but for" cause for the claims under § 1981. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020). Here, Evans pleads that "[he] does not make the claim that he was terminated for non-discriminatory reasons." (Dkt. 8 at 14). Considering the Amended Complaint as a whole, the Court finds that Evans has pleaded that discrimination was the "but for" cause of his adverse employment action. Accordingly, the Court finds that Evans's allegations sufficiently provide for a plausible claim for relief from discrimination under Title VII, § 1981, and the ADEA based on what is required to be pleaded at this stage of the litigation.

To sufficiently plead a retaliation claim under Title VII, the statute "requires the plaintiff to 'allege that [he] engaged in statutorily protected activity and was subjected to an adverse employment action as a result.'" *Carlson*, 758 F.3d at 828 (quoting *Luevano*, 722 F.3d at 1029). The plaintiff must also specifically identify the protected activity. *Id.* There are generally three categories of adverse employment actions: "(1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge." *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453–54 (7th Cir. 2011).

Evans alleges that he made internal complaints, including raising concerns surrounding

Kaegan's actions to other supervisors, as well as to the company's AskAnthony human resources service and Atwood. In his correspondence with Atwood, he mentions feeling humiliated and possibly targeted and references Kaegan's dismissal of an African American customer. Evans has alleged that Kaegan has discriminated against him. When accepting his allegations as true and drawing all reasonable inferences in Evans's favor, Evans connects Kaegan's harassment with Kaegan's unexplained dismissal of an African American customer at his table to show Kaegan's racial motivation in discriminating against him. Taken as a whole with the rest of the Amended Complaint, these allegations demonstrate that Evans reasonably believed that he was challenging prohibited behavior, making his complaints a statutorily protected activity. *Cf. Luevano*, 722 F.3d at 1029 (finding a complaint challenging conduct against the plaintiff's supervisor to be a statutorily protected activity, while noting that the plaintiff must reasonably believe that the complaint challenges conduct in violation of Title VII).

Hoosier Park argues that the only alleged adverse employment action is Evans's termination, which it contends is not included in the Amended Complaint and therefore should not be considered (Dkt. 23 at 3). However, Evans does mention his termination in his Amended Complaint, including alleging that Kaegan conspired "to rid him of his employment" following Evans's complaint about Kaegan's allegedly discriminatory behavior (Dkt. 8 at 13). Evans was terminated two weeks after he submitted this complaint (Dkt. 8 at 13 n.5). These allegations make it plausible that his protected activity was the "but for" cause of his termination as required for a claim of retaliation under Title VII. *Cf. Carlson*, 758 F.3d at 828 n.1 (noting that a plaintiff's protected activity must be the "but for" cause of the retaliation for a claim under Title VII). Because Evans has alleged that he engaged in a statutorily protected activity and suffered an adverse employment action as a result, the Court finds that he has sufficiently pleaded a retaliation

claim under Title VII.

Finally, Hoosier Park argues that the Court should dismiss the claim because Evans "has not identified any comparators who were treated more favorably." (Dkt. 20 at 10). Evans responds that he did provide comparator evidence, citing the two people who passed the first audition who were less than twenty-five years old, his alleged younger replacement, and those employees who received write-ups but were not terminated (Dkt. 22 at 7). At this stage, however, Evans is not required "to identify . . . a similarly situated individual." *Kaminski*, 23 F.4th at 777. It is possible that Evans will not be able to produce sufficient evidence at a later stage of the litigation to prove his claims. However, the pleading standard is different from a plaintiff's evidentiary burden. *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 834 (7th Cir. 2015). When a court is evaluating a motion to dismiss, questions of meeting that evidentiary burden "can safely be postponed to another day." *Id.*

The fact that Evans is *pro se* is an important consideration when evaluating the sufficiency of the Amended Complaint. The Court is required to construe a *pro se* plaintiff's complaint liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Evans claims that this principle excuses him from his burden to sufficiently plead his case (Dkt. 22 at 7). That is not true. Even proceeding *pro se*, Evans has the responsibility to plead a plausible claim that rises above the speculative level. Admittedly, the Courts ruling is generous. However, when liberally construed, the Amended Complaint alleges enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true. Accordingly, Hoosier Park's Motion to Dismiss is **denied** and in due course the Court will rule on the pending Motion for Summary Judgment.

**B. <u>Motion to Defer or Deny under Rule 56(d)</u>**

Evans asks the Court to defer or deny Hoosier Park's Motion for Summary Judgment (Dkt.

37), pursuant to Rule 56(d), because he does not have the allegedly essential facts needed to oppose the motion due to a lack of discovery (Dkt. 45 at 1). Evans submitted an affidavit in support of his motion affirming that he needs to conduct additional discovery to effectively oppose Hoosier Park's summary judgment motion. *Id.* at 2. Specifically, he lacks information from Hoosier Park regarding similarly situated employees who had criminal records more than seven years old and he seeks to depose Atwood to obtain information regarding (1) Hoosier Park's policies for employees with criminal records, (2) treatment of similarly situated individuals, (3) Hoosier Park's response to Evans's complaint, and (4) the rationale for terminating Evans. *Id.* at 3. Evans argues this information is necessary to establish that his termination from Hoosier Park was pretextual. *Id.* at 4.

Hoosier Park argues this request should be denied because, among other reasons, the Magistrate Judge concluded in the Minute Entry on Telephonic Discovery Conference (Dkt. 47), that "there are no outstanding discovery issues remaining to be addressed." (Dkt. 50 at 3). Although Evans failed to appear for the conference, as Hoosier Park correctly points out, this determination came after both parties had the opportunity to address outstanding discovery issues in their respective briefs (Dkt. 50 at 3). The brief from Hoosier Park outlines the issues related to the requested comparator evidence and the proposed deposition of Atwood (Dkt. 47-2 at 1–3).

The Seventh Circuit has noted that two of the most common reasons for denying a Rule 56(d) motion are "(1) the moving party's failure to pursue discovery diligently before the summary judgment motion, or (2) the apparent futility of the requested discovery." *Smith*, 933 F.3d at 866. Evans claims to "have pursued discovery in a diligent, sensible, and sequenced manner." (Dkt. 45 at 5). However, there have been instances when Evans has not been diligent. For example, Evans did not include arguments for receiving comparator information or deposing Atwood in his brief

he submitted prior to the Telephonic Conference on May 14, 2026, which he also failed to attend (Dkt. 47 at 1; Dkt. 47-1).[1] Hoosier Park also highlights that Evans failed to depose Atwood by the deadline on April 6, 2026, despite Evans expressing his interest in deposing Atwood as early as February 3, 2026 (Dkt. 50 at 6). *Cf. Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 886 (7th Cir. 2005) (denying plaintiffs' motion requesting time to depose additional individuals when "the plaintiffs had ample time (a total of 74 days of open discovery)" to depose such individuals). Evans's discovery regarding similarly situated employees who had criminal records more than seven years old would also be futile, because, as Hoosier Park has attested, it does not maintain information about its employees' criminal records that are older than seven years (Dkt. 50 at 4).

Given the resolution of outstanding discovery issues, Evans's lack of diligence, and the futility of requested discovery, it would not be fair to reopen discovery at this point. Accordingly, Evans's Motion to Defer or Deny Summary Judgment is **denied**.

## IV. CONCLUSION

For the foregoing reasons, Hoosier Park's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 19) is **DENIED**. Evans's Motion to Defer or Deny Summary Judgment (Dkt. 45) is **DENIED**. Evans is granted leave to file his response to Hoosier Park's Motion for Summary Judgment (Dkt. 37), within **twenty-eight days** of the date of this Order. Thereafter, Hoosier Park has **fourteen days** to file a reply.

The Clerk is **directed** to substitute Harrah's Hoosier Park Racing and Casino in the caption with the Defendant's proper name, Hoosier Park, LLC.

**SO ORDERED.**

Date: 8/18/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

[1] In Evans's Response to Order to Show Cause (Dkt. 49), he states that his failure to attend was due to his phone's clock unexpectedly being set to a different time zone.

Distribution:

JAMAR EVANS
217 W. 1st Street
Marion, IN 46952

Emily L. Connor
LITTLER MENDELSON, P.C. (Indianapolis)
econnor@littler.com

Jacob Paul Zurschmiede
Littler Mendelson
jzurschmiede@littler.com